IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
FEB 04 2011
U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

**STEPHANE DION and 91934885 QUEBEC INC., d/b/a DION DESIGNS,**

**Plaintiffs,**

**v.**

**ALLWIN POWERSPORTS CORPORATION, INC., ARTHUR LIAO, MHR HELMET CO. LTD., FOSHAN SHUNDE FENGXING HELMETS LTD., and JIANGMEN PENGCHENG HELMETS LTD.,**

**Defendants.**

**Cause No. 1:11-cv-0173 RLY -TAB**

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Stephane Dion and 91934885 Quebec Inc., d/b/a Dion Designs (collectively "Dion"), by counsel, pursuant to Fed. R. Civ. P. 65(a), hereby move for entry of a preliminary injunction against defendant Allwin Powersports Corporation, Inc. ("Allwin"), prohibiting its display, sale, marketing, promotion, offer to sell, exhibition or other commercial presentation of certain specified models in a new line of motorcycle helmet products at the 2011 Dealer Expo, an event being held on February 18-20, 2011 at the Indianapolis Convention Center. The products in question are based on designs created by Dion that have been misappropriated by Allwin and its affiliated supplier in China, and are being commercialized without authorization or any compensation to the designer. The Dealer Expo is the event at which these products are being launched in the United States market. Injunctive relief is necessary and appropriate to prevent irreparable harm to Dion

from the misuse of those proprietary designs, and to preserve the status quo pending an orderly adjudication of the claims in this action.

1. Mr. Dion is an established designer of motorcycle safety accessories, in particular motorcycle helmets. See Verified Complaint ¶15.[1] He is a Canadian national, doing business out of his Quebec studio and workshop under Dion Designs, a Canadian corporation. Id. ¶¶2, 3, 15.

2. In 2005, Dion entered into an arrangement with a manufacturer of helmets in China, operated through affiliated Chinese companies known collectively as "MHR," which were and are commonly owned and controlled by an individual named Arthur (or "Haotian") Liao, a Chinese national. See Verified Complaint ¶¶6-10, 18. Mr. Dion and Mr. Liao signed an agreement by which Dion Designs agreed to provide helmet designs to MHR exclusively for a period of four years and MHR agreed to pay a commission of $0.50 in U.S. dollars for each helmet sold by MHR using designs provided by Dion. Id. ¶¶18-20 & Ex. A.

3. MHR previously produced helmets for other companies to distribute and sell worldwide under various brand names, but subsequently began to market its own "LS2" line of helmets in Europe. See Verified Complaint ¶21. Until now, MHR has not marketed its own line of products in the United States. Around 2009, however, Mr. Liao asked Mr. Dion to create new designs for a line of LS2 helmets with which MHR could enter the United States market through an affiliated business. Id. ¶27.

---

[1] In order to expedite filing, service and notice to the defendants, a scanned copy of Mr. Dion's signed Verification is included in the Verified Complaint filed herewith. The original will be filed with the Court when received.

4. Dion then created a set of designs at the studio and workshop in Quebec, which were original and innovative, and incorporated both aesthetic and stylistic features and well as functional and useful elements. See Verified Complaint ¶¶28-30 & Exs. B, C. The designs featured a distinctive shield retention system, which operated to adjust and control the visor position and also formed a recognizable and appealing line and shape. Id. Dion turned over the new design materials, including drawings, 3D computer renderings, and physical prototypes, to Mr. Liao and MHR by or around March 2010. Id. ¶29.

5. Shortly after Dion delivered the new design materials, Mr. Liao announced the business arrangement with Dion was being terminated. See Verified Complaint ¶31. Mr. Liao initially recognized and acknowledged an ongoing obligation to continue to pay commissions on helmets utilizing designs created by Dion, but attempted to renegotiate the terms and rate. Id. ¶32. Mr. Liao later announced, however, that all further payments would be discontinued altogether. Id. ¶33. At the time the payments ceased, the new designs had not yet been incorporated in any commercial products, and consequently Dion received no compensation whatsoever for those designs. Id. ¶43.

6. Nevertheless, MHR launched a new line of LS2 products in Europe in late 2010 based on the new designs created by Dion. See Verified Complaint ¶¶36-39 & Exs. F, G. New models designated "FF385" and "FF358" are in all relevant respects identical to the two sets of designs created by Dion (compare Ex. B, C with Ex. E, F), and the new "FF386," "OF560" and "OF569" models all feature the distinctive shield retention system design that was included in the materials delivered by Dion by March 2010 (compare Exs. B, C with Ex. G).

7. Allwin was incorporated in Illinois in February 2010, shortly before Dion delivered the new designs to MHR and Mr. Liao, and is now actively engaged in preparations to enter the United States market with the LS2 line of helmets. See Verified Complaint ¶¶34-35 & Ex. D. It has launched a website that describes its products as "designed in Europe, created in China" and distributed by Allwin. Id. The website also describes MHR's history and the new Allwin venture to distribute LS2 helmets in North America. Id.

8. The Allwin website displays two FF385 models of helmets, apparently differing only in the surface graphics. See Verified Complaint ¶36 & Ex. E. The FF385 model is in all relevant respects identical to a set of Dion's new designs delivered to MHR in March 2010. Id. ¶37; compare Ex. B with Ex. E. While the FF385 is apparently meant to be Allwin's flagship product, Allwin also has the capability and likely intention, in light of the recent introduction of the new LS2 line in Europe, of carrying the other new LS2 helmets incorporating Dion's new designs, including specifically the FF358, FF386, OF560 and OF569 models. Id. ¶¶36-39.

9. Allwin plans to launch its new product line at the Dealer Expo in Indianapolis on February 18-20, 2011. See Verified Complaint ¶¶35, 41 & Ex. D. The Dealer Expo is an annual event held in Indianapolis, is the only major annual trade show for motorcycle dealers in the United States, and is an event of great significance in the industry. Id. ¶40. As announced on its website, Allwin plans to be an exhibitor at the Dealer Expo, and anticipates taking advantage of that opportunity to present its new LS2 products, in particular the FF385 model, to the dealer attendees. Id. ¶41 & Ex. D. The

event marks a pivotal launching point for the new products to a national audience of dealers in a position to carry and market the new line.

10. Concurrent with the filing of this motion, Dion is filing the Verified Complaint and a Brief in Support of Motion for Preliminary Injunction. The Verified Complaint, signed under the penalties of perjury by Mr. Dion, supports the factual grounds on which this motion is based, and provides foundation for the exhibits attached to the Complaint. The supporting Brief provides legal analysis substantiating the relief sought in this motion.

11. On the date of filing, counsel will send copies of the Verified Complaint, including Exhibits, this Motion and the supporting Brief by e-mail to all defendants at the following addresses: (1) info@ls2helmets.us, the contact e-mail address shown on Allwin's website; (2) liuchun10@hotmail.com, the registrant contact e-mail address shown through a WHOIS search for the Allwin website domain name, ls2helmets.us (Chun Liu is believed to be the chief officer of Allwin); and (3) carol@mhrhelmet.com, arthur@mhrhelmet.com and baky.xie@yahoo.com.cn, all of which are e-mail addresses through which Mr. Dion has communicated in the past with Mr. Liao, the principal owner and officer of the MHR family of companies. The messages will be sent both with and without attachments, in order to minimize the likelihood of being overlooked due to a spam filter or similar protection.

12. By express delivery, copies of the Verified Complaint, this Motion and the supporting Brief will also be served by hand one business day after filing at the corporate offices of Allwin at 2225 White Oak Circle, Aurora, Illinois 60502-9670. The injunctive relief sought in this motion is directed specifically to Allwin, which is the named exhibitor

making the planned presentation of the new LS2 product line at the Dealer Expo in Indianapolis on February 18th-20th. The other defendants, Mr. Liao and the MHR family of companies, are all Chinese nationals and will be formally served subsequently in accordance with applicable law. Every effort is being made, however, to provide prompt and actual notice of this action and this Motion to the Chinese defendants. The requested preliminary injunction, again, is directed specifically to Allwin, which is receiving actual notice and is being duly served in the most expeditious manner available.

13. The Verified Complaint seeks relief in seven counts: (1) false designations of origin and false representations under Lanham Act §43(a), 15 U.S.C. §1125(a); (2) copyright infringement; (3) misappropriation of trade secrets; (4) breach of contract; (5) conversion; (6) unfair competition; and (7) declaratory relief. As explained in the Verified Complaint, the defendants procured Dion's valuable and proprietary design materials under an arrangement providing for commissions on sales of all helmets utilizing the designs, then repudiated those obligations and paid nothing for the new designs, and now seek to launch a new product line in the United States based on those designs. Dion seeks injunctive and declaratory relief, as well as an award of damages, costs and fees.

14. The record as supported by the Verified Complaint and attached Exhibits establishes a reasonable likelihood of success on the merits. The course of dealings and a comparison between Dion's contemporaneous drawings and photos of his designs (see Exhibits B, C) and defendants' new line of LS2 products (see Exhibits E, F, G) clearly reveals that the products in question were based directly on the designs created by Dion. Defendants repudiated the obligation to pay royalties or commissions under the previously agreed arrangement before any products utilizing the new designs were sold, and hence

have paid nothing whatsoever to Dion for those valuable designs. Those designs were independently created by Dion in Quebec, are original and innovative creative works, incorporate Dion's proprietary intellectual property, have substantial commercial value, and upon defendants' refusal to pay the agreed compensation have been unlawfully misappropriated without valid authorization or license. Dion has asserted valid claims for relief, and is reasonably likely to establish entitlement to relief at trial.

15. Dion will suffer irreparable harm if Allwin is permitted to launch the new LS2 line of helmets based on the designs created by Dion at the Dealer Expo in Indianapolis. That event marks the first major commercial presentation of the products utilizing Dion's new designs in the United States market. The Indianapolis show is the only annual show in the United States for motorcycle dealers, and the primary occasion for manufacturers and distributors to introduce new products and market their latest lines to a national audience of United States dealers. Once the new LS2 line has been introduced broadly through that event, the remaining commercial value of the designs created by Dion would plummet and it would become extremely difficult or impossible for Dion to commercialize or otherwise realize value from the designs.

16. Any after-the-fact remedy at law would be inadequate to compensate Dion for the losses associated with Allwin's planned product launch. The designs are unique, and the misappropriation by Allwin is unlawful. The determination of lost profits, lost market opportunities and decline in value of Dion's intellectual property would be difficult to quantify. In addition, to the extent the course of dealings involves a citizen of China and his family of China-based companies, the availability of full and effective relief is hampered by the practical challenges of securing and enforcing a judgment against Chinese entities.

Allwin is a start-up company created in 2010, commenced its franchise arrangement with MHR in 2010, and is making its first product presentation at the Indianapolis show in February 2011. As a start-up company controlled by MHR and Mr. Liao, Allwin may or may not provide a sufficient vehicle for securing full and effective relief upon final judgment, potentially leaving Dion the difficult task of pursuing relief against a Chinese national and Chinese companies. On the other hand, at the present time, Allwin is the exhibitor with the booth planning to make the product presentation at the Dealer Expo in Indianapolis, and thus a preliminary injunction against Allwin would prevent irreparable harm to Dion and would be effective to avoid the enforcement and collection challenges that Dion would face after trial in the absence of the preliminary relief sought in this motion.

17. The balance of harms militates strongly in favor of maintaining the status quo by entering a preliminary injunction as sought, pending final disposition of this action on the merits. Allwin and its Chinese affiliates have not yet entered the United States market with the products based on the designs created by Dion, and therefore the preliminary relief sought would not substantially disrupt any existing business relationships or require widespread corrective action involving a network of dealers already carrying those products. MHR has been active to date only as an indirect participant in the United States market, manufacturing distinct lines of helmets for other companies to distribute under their own brand names, and at worst, a preliminary injunction would delay the plan to market MHR's own line of LS2 helmets in the United States while the merits of the claims in this action are being adjudicated. Absent a preliminary injunction, on the other hand, Dion would irrevocably lose the opportunity to

commercialize the new designs and would suffer irreparable injury to the underlying intellectual property rights.

18. The public interest would be served by entry of the preliminary injunctive relief sought in this motion. The misappropriation and infringement of intellectual property rights is unlawful and contrary to the public interest. Importation of infringing goods in circumvention of the laws protecting proprietary rights and information is a problem of public concern. The defendants may have thought that Dion had little recourse when they acquired his new designs and then decided not to pay anything for them, but now they are seeking to launch a product line in the United States market through a trade show at the Indianapolis Convention Center. The Court has the authority and the prerogative to deny Allwin the privilege of using the Dealer Expo in Indianapolis as a platform for injecting pirated goods imported from China into the United States market.

19. Dion accordingly seeks a preliminary injunction prohibiting Allwin from displaying, presenting, exhibiting, marketing, selling, offering to sell, promoting, advertising or otherwise commercializing, at the Dealer Expo in Indianapolis on February 18-20, 2011, the new LS2 line of motorcycle helmets incorporating the designs created by Dion and delivered to MHR in or around March 2010. The specific models that the requested injunction would cover, as designated in the 2011 LS2 catalog, would be the FF385, FF358, FF386, OF560 and OF569. In addition, Dion seeks a prohibition against Allwin advertising or otherwise promoting any of the specified models through its website, printed materials, communications with dealers or through any other medium of communication with participants in the United States market, pending final disposition of the claims in this action on the merits.

20. Mr. Dion is an individual of modest means, and Dion Designs is a small operation. In contrast, as stated in Allwin's website, MHR is one of the largest manufacturers of helmets in the world. Given the strong likelihood of success on the merits, the fact that defendants have not yet introduced the products at issue in the United States, and the disparity of relative resources that defendants could bring to bear in the event of protracted litigation in the absence of preliminary injunctive relief, the Court should exercise its discretion in setting the bond at a level that Dion would be capable of posting. Dion proposes a bond in the amount of $10,000, against the costs Allwin faces in withdrawing from the Indianapolis Expo or otherwise altering its planned presentation to conform with the requirements of the requested preliminary injunction. In this connection, Dion would be willing to expedite the final adjudication of this matter in such manner as the Court may direct, in order to minimize the period of time that the preliminary injunction would be in effect.

21. In the alternative, Dion requests that the Court consolidate the preliminary injunction motion against Allwin with trial on the merits, pursuant to Fed. R. Civ. P. 65(a)(2). In that event, the trial on the merits would be against Allwin only, and not the other defendants absent their consent, insofar as service against the Chinese defendants may not be completed prior to the hearing. If the preliminary injunction hearing were to be consolidated with trial on the merits against Allwin under this alternative, then the equitable relief being sought would be a permanent rather than a preliminary injunction, and the bond requirements under Fed. R. Civ. P. 65(c) would no longer be controlling.

22. In either event, Dion respectfully prays that the Court set this matter for hearing prior to February 18, 2011, the date on which the Dealer Expo in Indianapolis is

scheduled to begin. The relief sought in this motion directly addresses the exhibition planned by Allwin at that event, and consequently the requested relief, to be effective in preventing the irreparable harm arising from the misappropriation of the designs at issue, must be rendered prior to February 18, 2011.

WHEREFORE, Dion respectfully prays that the Court set this matter for hearing prior to February 18, 2011, provide Allwin all due notice and opportunity to be heard on the relief being sought, then grant this motion, enter an order enjoining Allwin from presenting, selling or marketing the FF385, FF358, FF386, OF560 or OF569 models of LS2 motorcycle helmets at the Dealer Expo in Indianapolis on February 18-20, 2011, further prohibit Allwin from advertising or promoting those models on its website or through other channels of marketing in the United States, all pending final disposition of the merits of the claims asserted in this action, set a bond in an amount not exceeding $10,000, or alternatively consolidate the hearing with trial on the merits and enter a permanent rather than a preliminary injunction against Allwin, and grant such further and additional relief as the Court may deem appropriate.

By their attorneys,

LEWIS & KAPPES

By: ______________________
Todd A. Richardson (16620-49)

Counsel for Stephane Dion and Dion Designs

LEWIS & KAPPES
One American Square, Suite 2500
Indianapolis, Indiana 46282
Telephone: (317) 639-1210
Fax: (317) 639-4882
E-mail: TRichardson@Lewis-Kappes.com